## ASHBEL DICKINSON *vs.* THOMAS WINCHESTER & another.

Where a father, with a view to the residence and employment of his minor son in a distant place, but without emancipating him, furnished him with various articles of clothing, and other things for his personal use, and also with a sum of money for general purposes, without any specific instructions as to the appropriation or use thereof; and the son, on the way to the place of his destination, bought other clothing with the money so furnished, without any directions from his father; it was held, that the clothing furnished to the son by the father, but not that which was purchased by the son, was the property of the father, who might maintain an action for the loss or injury thereof.

The keeper of a public house in the neighborhood of a railroad station, having given public notice that he would furnish a free conveyance, to and from the cars, to all passengers, with their baggage, travelling thereby, who should come to his house as guests; and for this purpose, having employed the proprietors of certain carriages, to take all such passengers, free of charge to them, and to convey them and their baggage to his house; if a traveller by the cars, to whom this arrangement is known, employ one of the carriages thus provided to take him and his

baggage to such public house, and his baggage is lost or stolen on the way, through a want of due care or skill on the part of the proprietor of the carriage or his driver, the keeper of the house will be liable therefor in assumpsit or case.

THIS was an action of assumpsit for the loss of a trunk and its contents. The trial was before *Wells*, C. J., in the court of common pleas.

The evidence was conflicting, but tended, among other things, to prove the following state of facts : —

The plaintiff, who resides in Vermont, made arrangements for his son, then of the age of nineteen years, to go to Milwaukie (Wisconsin), there to reside as a clerk. The length of time he was expected to remain was uncertain. Previous to the departure of his son, the plaintiff furnished him with various articles of clothing and some books, &c., and about $60 in money. The son went to New York, and there purchased various other articles of clothing with the money thus furnished to him by the plaintiff. While in New York, circumstances transpired which decided him not to go to Milwaukie, and by direction of the plaintiff, he started on his return home by the way of Springfield, where the defendants resided and kept a public house.

The defendants had previously issued a card, of which the following is a copy : " Exchange Hotel, Springfield, Mass. D. D. Winchester & Son. Free carriage to and from the cars."

The son of the plaintiff had stopped at the house of the defendants on his way to New York, and on leaving was presented with one of these cards.

The defendants had made arrangements with certain hackmen to take any persons from the cars who were going to their house as guests, and convey them and their baggage to the defendants' hotel without any charge to the guests, the defendants paying the hackmen for this service.

On the day mentioned in the declaration, the son of the plaintiff arrived in Springfield, from New York, in the cars. He there recognized the hackman employed by the defendants, who had been a porter in their employ, and informed him of his intention to go to the defendants' hotel, as a guest,

and gave him the trunk in question to be taken by him to the inn, he himself getting into the hack, and riding to the defendants' house, where he passed the night.

The trunk was put upon the rack of the carriage by the driver, one Howe, but was lost or stolen on the way from the cars to the inn. The trunk was not fastened, nor was any one on the back of the carriage to guard it; but the defendants contended and introduced evidence tending to prove, +hat, owing to the peculiar construction of the rack, this mode of conveying the trunk was a safe and proper one. This was controverted by the plaintiff, and the question was submitted to the jury under instructions hereinafter stated.

The contents of the trunk consisted mainly of articles of clothing furnished by the father, as before stated, and clothing purchased in New York, with money so furnished by the plaintiff.

The defendants contended, that upon this evidence the trunk and clothing must be deemed the property of the son, and therefore that this action could not be maintained.

On this point the court ruled and instructed the jury, that if the trunk and its contents consisted of articles furnished by the plaintiff for his minor son, or were purchased by the son with money furnished by the plaintiff, the legal presumption was, that the father only loaned them to the son for use, and the property still remained in him, and that this presumption could only be rebutted by proof, on the part of the defendants, that these articles were an absolute gift from the plaintiff to his son. But if the plaintiff had emancipated his son, then the legal presumption would be, that the articles which were furnished, or were permitted to be retained at the time of emancipation, or were furnished afterwards, were intended as a gift, and would put upon the plaintiff the burden of proving facts which would show that the property ir them remained in him.

In view of the evidence in this case, the presiding judge instructed the jury, that the plaintiff was entitled to recover, provided they were satisfied that he had proved the following facts : 1st, That he was the owner of the trunk and its con-

tents, regard being had to the instructions hereinbefore stated; 2d, That the defendants were hotel keepers; 3d, That defendants had given public notice, that they would take passengers arriving at Springfield in the cars, and going to their hotel, as guests, with their baggage, and transport them to their hotel free from charge; 4th, That they had made arrangements with a hackman to receive such passengers and transport them and their baggage to and from their hotel, free of charge to such passengers, and at the charge of the defendants; 5th, That the plaintiff's minor son, knowing of this arrangement, and intending to avail himself of it, did notify the hackman thus employed of his intention, and did deliver the trunk into the custody of said hackman, to be transported to the hotel of the defendants; 6th, That the trunk was lost or stolen while so in the charge of the hackman; and 7th, That this loss was occasioned by the want of due and reasonable care on the part of the hackman, while the trunk was in his charge.

The defendants also contended, that the plaintiff could not recover, because the evidence did not show any contract between him and the defendants, or prove any consideration moving from the plaintiff. But the court ruled and instructed the jury, that upon the evidence the son of the plaintiff might be regarded as his agent in making the contract for the transportation of the trunk, and any consideration moving from him would enure to the plaintiff's benefit.

The defendants further contended, that the evidence showed that the defendants were not to pay the hackman, unless he brought the baggage intrusted to his charge to their hotel; and they requested the court to instruct the jury that if they should find such to be the fact, it would exonerate the defendants from all liability in this action.

But the court instructed the jury, that unless this condition were known to the public, and so constructively to the plaintiff, of which there was no evidence, the above fact, if found for the defendants, would not affect their liability.

The jury returned a verdict for the plaintiff, and the defendants thereupon alleged exceptions.

*W. G. Bates*, for the defendant.

1. The ruling was wrong as to the property in both lots of clothing.   The presumption is, that the clothing furnished by the father to the son before he left home was a gift to the son.   At all events, the clothing purchased by the son in New York was his property.   2 Russ. on Cr. 1135 ; *Haynes's Case*, 12 Co. 113 ; *Grant's Case*, 5 Law Rep. 11, 15.

2. The defendants are not liable.   A gratuitous carrier is liable only for gross negligence ; a carrier for hire, for ordinary care.   Here the hire was not paid by passengers, but by the defendants.   The driver was not the servant of the defendants.   *Quarman* v. *Burnett*, 6 M. & W. 499; Story, Ag. § 554, a ; *Milligan* v. *Wedge*, 12 A. & E. 737 ; *Rapson* v. *Cubitt*, 9 M. & W. 710; *Laugher* v. *Pointer*, 5 B. & C. 547.

*G. T. Davis*, for the plaintiff.

1. The son not having been emancipated, the father was the owner of all the clothing, both of that furnished by him to the son, and of that bought by the latter.   *Benson* v. *Remington*, 4 Mass. 418; *Smith* v. *Smith*, 7 Car. & P. 401 ; Rev. Sts. *c.* 97, § 22.

2. In all the cases cited to the point of agency, there was no contract between the third person and the principal; here there was.   See *Stone* v. *Codman*, 15 Pick. 297.   The defendants, having held themselves out as hackney coachmen, are equitably estopped to deny their liability ; even if not liable under the general law of carriers.   Story, Bailm. § 498; Story, Ag. §§ 453, 454.

SHAW, C. J.   This is a case of new impression, and it may perhaps be doubted, whether, upon the evidence, the verdict upon some of the grounds should not have been the other way.   But it is not certain that we have a full report of the evidence, and our concern is only with the correctness of the instructions, under which the case went to the jury. We are of opinion, that the directions were right, except as to the clothes purchased by the son with the money furnished to him by the father, when the son left home, for general purposes, and without any specific directions to purchase clothes with it.   Those clothes, therefore, which were pur-

chased with this money, were not, we think, the property of the father at the time of the loss, and damages should not have been given for them. If the other clothes had been given to the son, or the son had been emancipated, the verdict should have been the other way, and so the judge directed.

The true ground, we are of opinion, on which the claim of the plaintiff rests, is that of an implied contract, and not the mere negligence of the driver of the coach as the defendants' servant. The defendants, by their card, had given previous notice to passengers generally, and to the plaintiff's son in particular, that a free passage should be furnished to their hotel, for all passengers arriving by the cars, who should choose to come there, and they had in fact engaged with the owner of the carriage, which the plaintiff's son entered, and to whom he delivered his trunk, to bring passengers at their expense. When, therefore, such coach owner or his driver thus employed undertook to carry the plaintiff's son, and took charge of his baggage accordingly, such person became the agent of the defendants *pro hac vice*, and they became responsible that he should exercise due care and skill in performing the duty, which the defendants had undertaken to do for the plaintiff.

Whether it be considered that the defendants are to be charged as innkeepers, who assume the care of the guest and his baggage at the station, instead of waiting for his arrival at their own door or stable, or whether they are to be considered as common carriers of persons, who are responsible for the care of passengers' baggage as incident, is perhaps immaterial. In the latter character, such responsibility attaches. *Brooke* v. *Pickwick*, 4 Bing. 218. In either case, the consideration for the undertaking is the profit to be derived by the innkeeper from the entertainment of the traveller, as a guest, and an implied promise is founded upon such consideration. It was argued for the defendants in the present case, that the proprietor of the carriage, whose servant the driver was, who lost the trunk, was carrying on a separate employment, and that he, and not the defendants,

was the person to whom the plaintiff must look for redress; and, in support of this view, the cases of *Bush* v. *Steinman*, 1 B. & P. 404, *Laugher* v. *Pointer*, 5 B. & Cr. 547, and *Milligan* v. *Wedge*, 12 Ad. & El. 737, were cited. If the *gravamen* of the plaintiff's complaint had been the negligence of the driver, in committing a tort on his person or property by careless driving, or other negligence, there would be much force in this argument, which is founded on the rule, that every man is responsible for damage done by his servant to another, in the conduct and prosecution of his business; as if, in the present case, the driver, in passing from the station to the inn, had negligently run over a person, the remedy might have been against the carriage owner, and not against these defendants. And it is often a difficult question, in complicated cases, to ascertain who is the immediate employer, and to whom the maxim *respondeat superior* applies, as it was found to be in the cases above cited. In the cases of *Laugher* v. *Pointer*, and of *Milligan* v. *Wedge*, no element of contract, of promise on the one side, or confidence reposed on the other, entered into the relations of the parties. They were cases of damage done by one stranger to another, and the question was, who employed the person who did the wrong. But in the present case, travellers are directed by the defendants to come to their inn by carriages employed and paid for by them; confidence is reposed in the driver of such carriage, whether employed immediately by themselves or another; and they are estopped to deny that the person thus actually employed is their agent for that purpose.

If it be a question, whether the plaintiff should declare in case or assumpsit, we are inclined to the opinion, that either is good. There are many cases in which a plaintiff has an election in this respect. Originally every action of assumpsit treated a breach of promise as a tort; and even on a plain note of hand, the old form was, to declare that the defendant, subtly and wilfully contriving and intending to defraud, &c., made a promise and refused to keep it. This form of action was resorted to, as we all know, to avoid the

defence of wager of law, to which the plaintiff was liable in a formal action of debt. The same rule applied to warranties of personal property, and to the performance of other duties. The plaintiff may set forth a duty, and aver a fact in violation of it as a tort, or aver an implied promise to perform it, and a failure to perform that promise. But upon the right of the plaintiff to recover, the court are of opinion, that though the case is new in regard to the facts, the rule is settled by the salutary principles of the common law. The practice of travelling on railroads is recent; from its nature it must necessarily give rise to new usages, and must create some new interests and relations between travellers and innholders, requiring a just and reasonable adaptation of the rules of the common law. Travellers cannot by this mode of conveyance be carried to the doors of inns and hotels; it is therefore for the mutual interest and benefit of both, that some confidential relations should be established between them, the mutual duties of which should be regulated by the plain dictates of convenience, policy and justice.

On the question, whether the father can sustain the action, we think it is not necessary that the plaintiff himself should have been the traveller and guest; so far as his property is affected, he may recover, though the traveller and guest be his agent or servant, or a party standing in that relation. *Mason* v. *Thompson,* 9 Pick. 280.

On the ground of misdirection in regard to damages, if not adjusted by the parties, there must be a new trial.